## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| R.I.L.R., *et al.*, on behalf of themselves and others similarly situated, | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| *v.* | ) ) | Civil Action No. _____ |
| JEH JOHNSON, Secretary of the Department of Homeland Security, in his official capacity, *et al.*, | ) ) ) ) | |
| *Defendants.* | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

Judy Rabinovitz
Michael K.T. Tan
Anand V. Balakrishnan
Lindsay Nash
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618

Dennis B. Auerbach (D.C. Bar No. 418982)
David M. Zionts (D.C. Bar No. 995170)
Philip Levitz (D.C. Bar No. 1018430)
Sonia Lahr-Pastor\*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001–4956
(202) 662-6000

\*Admitted to the Bar of the Commonwealth of
Pennsylvania, admission to the Bar of the
District of Columbia pending, and supervised
by the principals of the firm.

*Additional counsel listed at end of memorandum*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................... 2

ARGUMENT .................................................................................................................................... 4

    A.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF
          RULE 23(a).......................................................................................................... 5

         1.     THE PROPOSED CLASS SATISFIES THE NUMEROSITY
              REQUIREMENT OF RULE 23(a)(1). ..................................................... 5

         2.     THE PROPOSED CLASS SATISFIES THE COMMONALITY
              REQUIREMENT OF RULE 23(a)(2). ..................................................... 8

         3.     THE PROPOSED CLASS SATISFIES THE TYPICALITY
               REQUIREMENT OF RULE 23(a)(3). ..................................................... 11

         4.     THE PROPOSED CLASS SATISFIES THE ADEQUACY
               REQUIREMENT OF RULE 23(a)(4). ..................................................... 12

    B.     THE PROPOSED CLASS IS SUFFICIENTLY ASCERTAINABLE TO
          WARRANT CERTIFICATION. ........................................................................... 13

    C.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF
          RULE 23(b)(2)..................................................................................................... 14

    D.     THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS
          CLASS COUNSEL................................................................................................ 16

CONCLUSION ................................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................................4, 5

*Basel v. Knebel*,
  551 F.2d 395 (D.C. Cir. 1977)................................................................................12

*\*Bynum v. District of Columbia*,
  214 F.R.D. 27 (D.D.C. 2003)....................................................................... *passim*

*Card v. City of Cleveland*,
  270 F.R.D. 280 (N.D. Ohio 2010) ............................................................................8

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
  239 F.R.D. 9 (D.D.C. 2006)...................................................................5, 6, 11, 15

*DL v. Dist. of Columbia*,
  302 F.R.D. 1 (D.D.C. 2013)...........................................................................6, 8, 12

*\*DL v. Dist. of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) ............................................9

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
  446 U.S. 318 (1980)....................................................................................................5

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)..............................................................................................9, 11

*Gerstein v. Pugh*,
  420 U.S. 103 (1975)..................................................................................................12

*Gordon v. Johnson*,
  300 F.R.D. 31 (D. Mass. 2014)................................................................................16

*Johnson v. District of Columbia*,
  248 F.R.D. 46 (D.D.C. 2008)......................................................................... *passim*

*Lehr v. City of Sacramento*,
  259 F.R.D. 479 (E.D. Cal. 2009) ..............................................................................8

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
  246 F.R.D. 293 (D.D.C. 2007)..................................................................................5

*Olson v. Brown*,
284 F.R.D. 398 (N.D. Ind. 2012) ............................................................8

*Pigford v. Glickman*,
182 F.R.D. 341 (D.D.C. 1998) .........................................................13, 14

*Richards v. Delta Air Lines, Inc.*,
453 F.3d 525 (D.C. Cir. 2006) ................................................................4

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ...............................................................6, 8

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2009) ........................................................15, 16

*Sosna v. Iowa*,
419 U.S. 393 (1975) ..............................................................................12

*Taylor v. District of Columbia Water & Sewer Auth.*,
241 F.R.D. 33 (D.D.C. 2007) ..........................................6, 11, 12, 15

*Twelve John Does v. Dist. of Columbia*,
117 F.3d 571 (D.C. Cir. 1997) ..............................................................12

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) ..............................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .................................................................5, 9, 10

**Statutes**

8 U.S.C. § 1225(b)(1)(B) ..............................................................2, 4, 17

8 U.S.C. § 1226(a) .......................................................................6, 7, 16

8 U.S.C. § 1226(a)(2) ..........................................................................4, 17

8 U.S.C. § 1252(f)(1) .......................................................................15, 16

**Other Authorities**

8 C.F.R. § 208.30 ......................................................................................2

8 C.F.R. § 208.31 ...............................................................................4, 17

8 C.F.R. § 1236.1(c)(8) ......................................................................4, 17

Fed. R. Civ. P. 23(a)(1) ....................................................................5, 6, 8

iii

Fed. R. Civ. P. 23(a)(2)...........................................................................................................8, 10

Fed. R. Civ. P. 23(a)(3)...........................................................................................................11, 12

Fed. R. Civ. P. 23(a)(4)...........................................................................................................12

Rule 23(b)(2).............................................................................................................................5, 14, 15

Rule 23(g)(1)..............................................................................................................................16, 17

## INTRODUCTION

The Department of Homeland Security ("DHS") has adopted a uniform policy of denying release to detained Central American migrant families who have been determined to possess a credible fear of persecution and are eligible for release on bond, recognizance, or other conditions (the "No-Release Policy").  Under this policy, it is irrelevant whether continued detention is necessary to ensure appearance at immigration hearings or to protect the community; officers have virtually no discretion to grant migrants release, even if they pose no flight risk or community danger that requires their detention.  Instead, DHS has directed that Immigration and Customs Enforcement ("ICE") officers deny release to such families.  The purpose of the policy is to send a message of deterrence to future hypothetical migrants: if you come to America, you will be detained.  The No-Release Policy violates the Immigration and Nationality Act ("INA"), DHS's own regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution, and it is arbitrary and capricious.  It thus constitutes unlawful agency action under the Administrative Procedure Act ("APA").

Plaintiffs have filed this class action to challenge the No-Release Policy.  The lawsuit seeks a declaration that the policy is unlawful, and an injunction requiring a lawful custody determination for class members.  Every class member is entitled to such a determination, every class member is being denied it, and every class member suffers a grievous and compounding harm every day that a lawful custody determination is denied.

As explained in detail below, the proposed class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2).  All class members, including the Plaintiffs, are or will be subject to a uniform policy and practice of denying release to persons held at ICE's family detention centers who have received a positive credible fear determination and are eligible for release on bond, recognizance, or other conditions, without an individualized

1

determination that their detention is required because they pose a flight risk or danger to the community.  All class members are being or will be detained pursuant to that uniform policy.

## FACTUAL BACKGROUND

Plaintiffs are Central American mothers and their children from Guatemala, Honduras, and El Salvador who entered the United States and are being held at the Karnes County Residential Center in Karnes City, Texas—one of several ICE family detention facilities. Declaration of R.I.L.R. ("R.I.L.R. Decl.") (Dec. 12, 2014) ¶¶ 2, 4 (attached as Exhibit 9 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction); Declaration of Z.M.R. ("Z.M.R. Decl.") ¶¶ 2-3 (attached as Exhibit 10 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction); Declaration of W.M.C. ("W.M.C. Decl.") ¶¶ 2, 4 (attached as Exhibit 12 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction). Each Plaintiff was interviewed by a U.S. Citizenship and Immigration Services ("USCIS") official pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), and determined to have a credible fear of persecution.  R.I.L.R. Decl. ¶14; Z.M.R. Decl. ¶ 15; W.M.C. Decl. ¶ 16.  This means that "there is a significant possibility, taking into account the credibility of the statements made by [the Plaintiff] in support of [her] claim[s] and such other facts as are known to the officer, that [the Plaintiff] could establish eligibility for asylum under section 1158 of this title."  *See* 8 U.S.C. § 1225(b)(1)(B)(v); *see also* 8 C.F.R. § 208.30 (describing credible fear interview and determination process).  Each Plaintiff will thus be able to pursue an asylum claim in removal proceedings before an Immigration Judge ("IJ").

Prior to June 2014, a person who received a positive credible fear determination and was eligible for release on bond, recognizance, or other conditions generally received an individualized determination from an ICE officer as to whether she or he should be released, based on the ICE officer's judgment of whether the person posed a flight risk or a danger to the

community.  Declaration of Barbara Hines ("Hines Decl.") ¶ 9 (Dec. 14, 2014) (attached as

Exhibit 4 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction);

Declaration of Michelle Brané ("Brané Decl.") ¶ 12 (Dec. 15, 2014) (attached as Exhibit 1 to

Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction).  DHS rarely detained

families at all, regardless of whether they had received a positive credible fear determination.

Hines Decl. ¶ 8; Brané Decl. ¶ 11; Declaration of Matthew Archambeault ("Archambeault

Decl.") ¶ 14 (Dec. 12, 2014) (attached as Exhibit 10 to Plaintiffs' Memorandum in Support of

Motion for Preliminary Injunction); Declaration of Valerie Burch ("Burch Decl.") ¶¶ 7-9 (Dec.

14, 2014) (attached as Exhibit 3 to Plaintiffs' Memorandum in Support of Motion for

Preliminary Injunction).

        DHS has now adopted a new policy.  Although Plaintiffs and similarly situated migrants

have received a positive credible fear determination, they nevertheless have been denied release

without any individualized assessment of whether their detention is required because they pose a

flight risk or danger to the community.  Brané Decl. ¶ 12; Hines Decl. ¶ 14; Declaration of

Virginia Marie Raymond ("Raymond Decl.") ¶¶ 7-8 (Dec. 13, 2014) (attached as Exhibit 6 to

Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction); Declaration of

Allegra McLeod ("McLeod Decl.") ¶¶ 6-7 (Dec. 14, 2014) (attached as Exhibit 5 to Plaintiffs'

Memorandum in Support of Motion for Preliminary Injunction).  ICE has applied this No-

Release policy at its family detention facilities nationwide, including Karnes; the Artesia family

detention center in Artesia, New Mexico; and the Berks County Residential Center in Leesport,

Pennsylvania.  Brané Decl. ¶ 12; McLeod Decl. ¶¶ 6-7; Hines Decl. ¶¶ 12-13; Raymond Decl.

¶ 7; Archambeault Decl. ¶¶ 9, 12.  As a result, Plaintiffs and those similarly situated are still

being detained in ICE family detention facilities, and are required to remain there unless they are

able to successfully request a custody redetermination before the immigration courts, which are administered by a separate agency (the Department of Justice).  Although the immigration court can order release following a bond hearing, it routinely takes 3-8 weeks before such a hearing takes place.  McLeod Decl. ¶ 14; Hines Decl. ¶ 21; Archambeault Decl. ¶ 11.  In some cases, more than three months have passed between ICE's initial decision and a hearing before an IJ. McLeod Decl. ¶ 14.  During this time, migrants (including young children) remain in detention, and experience traumatic and irreparable harms as a result of that experience. Declaration of Luis H. Zayas ("Zayas Decl.") ¶¶ 10-11 (Dec. 10, 2014) (attached as Exhibit 15 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction).  Every day, a new group of vulnerable migrants finds itself irreparably harmed by this same policy.

Based on the foregoing, Plaintiffs move to certify a class consisting of all persons who: (a) have been or will be detained in ICE family detention facilities; (b) have been or will be determined to have a credible fear of persecution in their home country, *see* 8 U.S.C. § 1225(b)(1)(B)(v), § 1158; 8 C.F.R. § 208.31; and (c) are eligible for release on bond, recognizance, or other conditions, pursuant to 8 U.S.C. § 1226(a)(2) and 8 C.F.R. § 1236.1(c)(8), but (d) have been or will be denied such release pursuant to DHS's blanket policy of denying release to detained families without conducting an individualized determination of flight risk or danger to the community.

## ARGUMENT

To obtain class certification, Plaintiffs must meet the requirements of Federal Rule of Civil Procedure 23(a), and one of Rule 23(b)'s subdivisions.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  There are four specific prerequisites for class certification under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  *Amchem Prods.*, 521 U.S. at 613-14; *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 298 (D.D.C. 2007). These requirements are met here.

The class also fulfills the requirements of Rule 23(b).  Plaintiffs seek to proceed under Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2557.  This requirement is satisfied because all class members are or will be subjected to DHS's uniform and illegal No-Release Policy.

## A.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

### 1.    THE PROPOSED CLASS SATISFIES THE NUMEROSITY REQUIREMENT OF RULE 23(a)(1).

The class satisfies the "numerosity" requirement that a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requirement is determined case by case, and "imposes no absolute limitations."  *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003), quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980); *see also Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 25 (D.D.C. 2006) ("There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, each decision turns on the particularized circumstances of the case.").  However, generally speaking, courts have found that a proposed class of at least 40 members satisfies the numerosity requirement.  *Johnson v. District of Columbia*, 248 F.R.D. 46,

52 (D.D.C. 2008); *Taylor v. District of Columbia Water & Sewer Auth.*, 241 F.R.D. 33, 37

(D.D.C. 2007); *Bynum*, 214 F.R.D. at 32; *Disability Rights Council of Greater Wash.*, 239

F.R.D. at 25.  Plaintiffs need not prove exactly how many people fall within the class to satisfy

Rule 23(a)(1).  *Bynum*, 214 F.R.D. at 32; *Johnson*, 248 F.R.D. at 53.

  "Demonstrating impracticability of joinder does not mandate that joinder of all parties be

impossible—only that the difficulty or inconvenience of joining all members of the class make

use of the class action appropriate."  *DL v. Dist. of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013)

(internal quotation marks and citation omitted).  Relevant factors include the "financial resources

of class members, the ability of claimants to institute individual suits, and requests for

prospective injunctive relief which would involve future class members."  *Id.*, quoting *Robidoux

v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

  The proposed class satisfies these requirements.  Considering only the relatively small

proportion of Karnes detainees that come to the attention of pro bono efforts, there are more than

40 currently-detained individuals who meet the proposed class definition.  *See* Declaration of

Lauren Connell ("Connell Decl.") ¶ 7 (Dec. 15, 2014) (attached as Exhibit 3) (attesting to

personal knowledge of at least 34 such individuals which, together with the eight named

plaintiffs, demonstrates that at least 42 class members exist).  In addition, since August 2014, the

Karnes pro bono project has identified at least 64 families—consisting of a mother and one or

more child—who received a positive credible fear determination, were eligible for release under

section 1226(a), and yet were denied release under DHS's No-Release Policy.  *See* Hines Decl.

¶¶ 12-13, 18-20.  The American Immigration Lawyers' Association identified 658 individual

family members detained at Artesia between August 2014 and early December 2014 who

received a positive credible fear determination, were eligible for release under section 1226(a),

6

and yet were denied release under DHS's No-Release Policy. *See* McLeod Decl. ¶¶ 8-11. More broadly, between July and October 2014, a total of 1008 individuals in family detention at Artesia and Karnes passed their credible fear interview with an asylum officer. As the more detailed data from these facilities indicate, a sizeable number of those individuals were eligible for release on bond, recognizance, or other conditions under 8 U.S.C. § 1226(a), and yet remained detained under DHS's No-Release Policy. *See* Hines Decl. ¶ 12-13, 18-20; McLeod Decl. ¶¶ 6-7, 11. Persons who received a positive credible fear determination were and continue to be uniformly denied release on bond, recognizance, or other conditions by ICE without an individualized determination that flight risk or danger to the community requires their detention. Brané Decl. ¶¶ 21-22; McLeod Decl. ¶ 18; Hines Decl. ¶ 14; Raymond Decl. ¶ 7.

Thus, even the most conservative review of the data, coupled with DHS's ongoing application of its No-Release Policy, demonstrate that well over 40 individuals who are members of the proposed class are currently held in DHS's family detention centers. Further, because the proposed class includes persons who are or will be detained in these facilities, and because these facilities are being expanded to increase their capacity to approximately 3,800 beds, the class is certainly significantly larger than the 40 individuals that presumptively satisfy the numerosity requirement. *See Johnson*, 248 F.R.D. at 52; Brané Decl. ¶ 14.

Joinder is also impracticable for additional reasons. First, the members of the proposed class are inherently transitory. While Plaintiffs and many others are presently being detained pursuant to DHS's No-Release Policy, their status may be affected by a redetermination by an IJ (a process administered by a separate agency), or by the ultimate disposition of their underlying asylum claims. As some individuals exit the class—although not before experiencing significant and irreparable harm—they will be replaced by new members who become subject to the illegal

No-Release Policy.  A class action is the appropriate vehicle for resolving the claims in these circumstances.  *See Olson v. Brown*, 284 F.R.D. 398, 408 (N.D. Ind. 2012); *Lehr v. City of Sacramento*, 259 F.R.D. 479, 482 (E.D. Cal. 2009).

Relatedly, the class seeks declaratory and injunctive relief for future class members. Joinder is inherently impracticable where "the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join." *DL*, 302 F.R.D. at 11; *see also Olson*, 284 F.R.D. at 408 ("future members make joinder inherently impracticable because there is no way to know who they will be"); *Card v. City of Cleveland*, 270 F.R.D. 280, 291 (N.D. Ohio 2010); *Robidoux*, 987 F.2d at 936 (including requests for prospective relief that would involve future class members as a factor to consider in deciding whether joinder is impracticable).

Finally, the putative class members have few, if any, financial resources, limited or no English language proficiency, and are wholly unfamiliar with the American legal system.  Brané Decl. ¶ 15; Hines Decl. ¶ 29.  This would make it extremely difficult for them to institute individual suits.  Archambeault Decl. ¶ 14; *see Robidoux*, 987 F.2d at 936 (limited financial resources of class members and little ability to institute individual suits weigh in favor of finding joinder impracticable).

The proposed class thus satisfies the numerosity requirement of Rule 23(a)(1).

### 2. THE PROPOSED CLASS SATISFIES THE COMMONALITY REQUIREMENT OF RULE 23(a)(2).

Rule 23(a)(2) is likewise satisfied.  It requires that Plaintiffs establish that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Class members' claims must depend on "a common contention [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each

one of the claims in one stroke." *Wal-Mart Stores*, 131 S. Ct. at 2551.  In other words, the representative plaintiffs must show that the class members have "suffered the same injury." *Id.*, quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982).  As the D.C. Circuit recently explained, commonality is satisfied where there is "a uniform policy or practice that affects all class members."  *DL v. Dist. of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013).

"[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum*, 214 F.R.D. at 33.  "Even a single common question will do" to support a commonality finding.  *Wal-Mart Stores*, 131 S. Ct. at 2556 (internal formatting and citations omitted).  For example, a proposed class consisting of illegally detained persons satisfies the commonality requirement even if the class members were detained for different amounts of time. *Bynum*, 214 F.R.D. at 34.

The proposed class satisfies the commonality requirement.  Each class member has been or will be denied release without an individualized determination that she or he poses a danger to the community or flight risk that requires detention, but rather as a result of a "uniform policy or practice," *DL*, 713 F.3d at 128, *i.e.*, DHS's policy of denying release to detained Central American families based on general deterrence concerns.

The existence of this policy is not subject to meaningful dispute.  The numbers themselves tell the story: prior to June 2014, migrants in exactly the same position as Plaintiffs and other proposed class members were generally released, but now virtually no one is released. Brané Decl. ¶¶ 11, 22; Hines Decl. ¶¶ 8, 10-14; McLeod Decl. ¶ 18; Burch Decl. ¶¶ 7-9.  ICE officers have admitted that the No-Release Policy exists: one officer stated that "[o]ur directive is no bonds to anyone."  Raymond Decl. ¶ 7  (emphasis omitted).  And in immigration court

9

proceedings, DHS has defended putative class members' continued detention by filing identical affidavits declaring the need for a No-Release policy (specifically, by applying a policy of no bond or prohibitively high bond) applicable to migrants in Plaintiffs' position for reasons of general deterrence.  *See* Immigration Court Declaration of Philip T. Miller, ICE Assistant Director of Field Operations for Enforcement and Removal Operations ("Miller Decl.") ¶¶ 9, 11-12 (Aug. 7, 2014) (attached at Exhibit A to the Hines Declaration), *available at* http://www.aila.org/content/default.aspx?docid=49910; Immigration Court Declaration of Traci A. Lembke, ICE Assistant Director over Investigation Programs for HSI and ICE ("Lembke Decl.") ¶ 19 (Aug. 7, 2014) (attached at Exhibit A to the Hines Declaration), *available at* http://www.aila.org/content/default.aspx?docid=49910; Brané Decl. ¶ 24; Hines Decl. ¶ 15; McLeod Decl. ¶ 19.  In short, it is clear that the No-Release Policy exists, that it is being uniformly applied to putative class members, and that it is responsible for putative class members' continued detention in ICE facilities, despite their having received positive credible fear determinations.

Plaintiffs allege that the No-Release Policy violates the INA, applicable regulations, and the Fifth Amendment, and that it is arbitrary and capricious, and that it thus constitutes illegal agency action under the APA.  They seek declaratory and injunctive relief invalidating the policy and enjoining ICE from applying the policy to deny class members release.  In other words, all members of the putative class are challenging the same, uniform policy or practice, and a determination of whether that policy is unlawful on one or more grounds would resolve all class members' claims "in one stroke."  *Wal-Mart Stores*, 131 S. Ct. at 2251.  Accordingly, the class satisfies the commonality requirement of Rule 23(a)(2).

**3.      THE PROPOSED CLASS SATISFIES THE TYPICALITY
          REQUIREMENT OF RULE 23(a)(3).**

Plaintiffs' claims also are "typical of the claims . . . of the class."  Fed. R. Civ. P.

23(a)(3).  Typicality means that the representative plaintiffs must "possess the same interest and

suffer the same injury" as the other class members.  *Falcon*, 457 U.S. at 156  (internal quotation

marks and citations omitted).  The typicality requirement overlaps with the commonality

requirement, because both "serve as 'guideposts'" to determine whether a class action is

practical, and whether the representative plaintiff's claims are sufficiently interrelated with the

class claims to protect absent class members.  *Taylor v. District of Columbia Water & Sewer

Auth.*, 241 F.R.D. at 44-45, quoting *Falcon*, 457 U.S. at 157 n.13.

Factual variations between the representative plaintiffs and the absent class members "do

not negate typicality."  *Bynum*, 214 F.R.D. at 34.   "Rather, if the named plaintiffs' claims are

based on the same legal theory as the claims of the other class members, it will suffice to show

that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the

other class members' claims."  *Id*. at 35.   *See also Johnson*, 248 F.R.D. at 53 (the typicality

requirement is satisfied "if the claims of the named plaintiffs arise from the same practice or

course of conduct that gives rise to the claims of the proposed class members") (internal

quotation marks and citation omitted); *Disability Rights Council of Greater Washington*, 239

F.R.D. at 27.  The typicality requirement is liberally construed by courts.  *Bynum*, 214 F.R.D. at

34.

The proposed class representatives here satisfy the typicality requirement.  Like the other

putative class members, all of the proposed class representatives have been denied individualized

custody determinations based on whether flight risk or danger to the community require their

detention.  All of them continue to be detained pursuant to the No-Release Policy.

11

In short, the claims of the proposed class representatives "arise from the same practice or course of conduct that gives rise to the claims of the proposed class members," *Johnson*, 248 F.R.D. at 53 (internal quotation marks and citation omitted), and are based on the same legal theories as the claims of the other class members. *Bynum*, 214 F.R.D. at 34.  Because the proposed class representatives have suffered the same injury and possess the same interests as the other members of the proposed class, their claims are "typical" under Rule 23(a)(3).[1]

### 4.   THE PROPOSED CLASS SATISFIES THE ADEQUACY REQUIREMENT OF RULE 23(a)(4).

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In order to satisfy this requirement, Plaintiffs must show both that (1) there is no conflict of interest between the named members and the rest of the class, and that (2) counsel for the class is competent to represent the class. *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997); *Johnson*, 248 F.R.D. at 53-54; *Taylor*, 241 F.R.D. at 45; *Bynum*, 214 F.R.D. at 35.  These tests are met.

First, there is no conflict between the proposed class representatives and the rest of the proposed class.  The proposed class representatives have suffered the same injury as the rest of

---

[1] It is possible, though far from assured, that some or all of the Plaintiffs could be released on bond at their IJ hearings before this Court has an opportunity to decide the present motion. (R.I.L.R. had a hearing scheduled for December 22, 2014, R.I.L.R. Decl. ¶ 14; on the eve of this filing, however, counsel learned that this hearing has been postponed until January 5, 2015.) Even if that occurs, the case would not be moot and class certification still would be appropriate. Because the class is inherently transitory and the illegal No-Release Policy risks evading review, *see supra* pp. 6-7, it would (if necessary) be appropriate to relate-back the claims to the time of filing.  *See Sosna v. Iowa*, 419 U.S. 393, 401 (1975) (announcing "capable of repetition, yet evading review" exception to mootness (internal quotation marks and citation omitted)); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (applying *Sosna* to class actions); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 & n.6 (1980) (citing *Gerstein* and *Sosna* in support of "inherently transitory" standard); *see also Basel v. Knebel*, 551 F.2d 395, 397 n.1 (D.C. Cir. 1977) ("[I]n some circumstances a class action should not be deemed moot even if the named plaintiff's claim becomes moot prior to certification of the class."); *DL*, 302 F.R.D. at 20-21 (granting motion for class certification despite mootness of individual plaintiffs' claims).

the class members, namely, denial of an individualized custody determination based on flight

risk and danger to the community, and continued detention based on generalized deterrence

concerns pursuant to the No-Release Policy.  The proposed class representatives assert the same

claims as the other members of the class, based on the fact that the No-Release Policy violates

the INA, DHS regulations, and the Fifth Amendment.  Finally, the proposed class representatives

seek declaratory and injunctive relief that will benefit all members of the class.  As the class

representatives' interest in this litigation is aligned with that of the class as a whole, it follows

that there is no conflict of interest.

Second, proposed class counsel are competent to represent the class.  Plaintiffs' counsel

has devoted, and will continue to devote, substantial time and resources to the prosecution of this

action.  Declaration of Philip J. Levitz ("Levitz Decl.") ¶ 10 (Dec. 15, 2014) (attached as Exhibit

1); Declaration of Michael Tan ("Tan Decl.") ¶ 28 (Dec. 15, 2014) (attached as Exhibit 2).  They

have extensive experience with both immigration law and class action litigation, and are

qualified to prosecute this action.  *See generally* Levitz Decl.; Tan Decl.

## B.    THE PROPOSED CLASS IS SUFFICIENTLY ASCERTAINABLE TO WARRANT CERTIFICATION.

"It is axiomatic that for a class action to be certified a 'class' must exist."  *Johnson*, 248

F.R.D. at 52 (internal quotation marks and citations omitted).  This "common-sense requirement"

is not designed to be "a particularly stringent test, but plaintiffs must at least be able to establish

that the general outlines of the membership of the class are determinable at the outset of the

litigation.  In other words, the class must be sufficiently definite that it is administratively

feasible for the court to determine whether a particular individual is a member."  *Pigford v.*

*Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998) (internal quotation marks and citation omitted);

*see also Bynum*, 214 F.R.D. at 32 (the proposed class definition must "set[] forth general

13

parameters that limit the scope of the class to such a degree that it is administratively feasible for this Court to determine whether a particular individual is a member of the class").

The proposed class here is sufficiently ascertainable to warrant certification.  The class is defined based on objective criteria that can be easily determined for any possible class member. Class members are persons who (1) have entered the United States from Central America, (2) have been detained by ICE at a family detention center, (3) have received a positive credible fear determination, and (4) nevertheless remain in detention without an individualized determination that their detention is required because they pose a flight risk or danger to the community. Plaintiffs allege, and have marshaled evidence that establishes, that they (and the other proposed class members) continue to be detained pursuant to the No-Release Policy.  In other words, the sole reason that persons falling within the objective criteria set forth above continue to be denied an individualized custody determination is because of DHS's illegal No-Release Policy. Everyone who remains in detention at Artesia, Karnes, and Berks following a positive credible fear determination, and everyone who will be detained under the same circumstances at Dilley or any other family detention facility DHS establishes, is necessarily a member of the class.

It follows that the class can be ascertained with reasonable certainty.  It is certainly "administratively feasible" to determine whether a particular person falls within the class.  *See Pigford*, 182 F.R.D. at 346.  Accordingly, the proposed class is sufficiently ascertainable to warrant certification.

## C.      THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(2).

Rule 23(b)(2) requires that Plaintiffs demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ.

P. 23(b)(2).  Courts in this District have interpreted Rule 23(b)(2) to impose two requirements:
"(1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that
plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class."
*Bynum*, 214 F.R.D. at 37; *Disability Rights Water Council of Greater Washington*, 239 F.R.D. at
28.  To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent
manner toward members of the class so that his actions may be viewed as part of a pattern of
activity."  *Bynum*, 214 F.R.D. at 37 (internal quotation marks and citation omitted). *See also*
*Taylor*, 241 F.R.D. at 47 (proposed class alleging a pattern or practice of discrimination satisfied
Rule 23(b)(2)).

The proposed class satisfies these requirements.  All Plaintiffs are being detained by ICE,
in ICE-controlled family detention facilities, without an individualized custody determination,
and pursuant to the uniform No-Release Policy.  Plaintiffs allege that they have experienced a
systemic harm, namely the application of the No-Release Policy.  They allege that this policy
violates the INA, applicable regulations, and the Fifth Amendment, and is arbitrary and
capricious, and thus constitutes unlawful agency action under the APA.  Plaintiffs seek
declaratory and injunctive relief requiring DHS and ICE to make custody determinations in
compliance with the law.  In other words, Plaintiffs and other putative class members challenge a
uniform policy and practice, and seek declaratory and injunctive relief that will benefit the class
as a whole.  This is exactly the sort of claim that falls within Rule 23(b)(2).

Defendants may oppose class certification on the ground that no class-wide injunctive
relief is available under 8 U.S.C. § 1252(f)(1), which restricts the ability of courts to enjoin "the
operation of" the detention and removal provisions of the INA.  Any such argument would be
"doubly mistaken."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2009).  First, "[i]t is

simply not the case that Section 1252(f) bars [Plaintiffs] from receiving declaratory relief on behalf of the class." *Id.* Second, by its plain text, Section 1252(f)(1) "prohibits only injunction of 'the operation of' the detention statutes, not injunction of a *violation* of the statutes." *Id.* at 1120 (emphasis added); *see also Gordon v. Johnson*, 300 F.R.D. 31, 40 (D. Mass. 2014) ("[T]he court need not prohibit the operation of any part of the law to correct the government's *incorrect* application of it."). A class-wide injunction in this case would not obstruct the "operation of" § 1226(a); it would only enjoin Defendants from violating that statute and its implementing regulations.

## D.   THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL

Rule 23(g)(1) requires a court that certifies a class to appoint class counsel. Fed. R. Civ. P. 23(g)(1). In appointing class counsel, Rule 23(g)(1) requires a court to consider "(i) the work counsel has done in identifying or investigating potential claims in th[is] action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A); *Johnson*, 248 F.R.D. at 58.

Based on these factors, the Court should designate Plaintiffs' counsel as class counsel. Counsel has already devoted substantial resources to investigating the underlying facts, and has devoted substantial time and significant resources since the fall of 2014 to factual development, developing legal arguments, and drafting briefs. *See* Levitz Decl. ¶ 10, Tan Decl. ¶ 28. Plaintiffs' counsel also has extensive experience litigating class actions, and are highly experienced in the area of immigration law. *Id.* Finally, counsel are in a position to devote

16

substantial resources to the litigation going forward, and will fairly and adequately represent the interests of the class. *Id.* Therefore, based on the factors enumerated in Rule 23(g)(1), the Court should designate plaintiffs' counsel as class counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted. Plaintiffs respectfully request that the Court certify the proposed class, consisting of all persons who: (a) have been or will be detained in ICE family detention facilities; (b) have been or will be determined to have a credible fear of persecution in their home country, *see* 8 U.S.C. § 1225(b)(1)(B)(v), § 1158; 8 C.F.R. § 208.31; and (c) are eligible for release on bond, recognizance, or other conditions, pursuant to 8 U.S.C. § 1226(a)(2) and 8 C.F.R. § 1236.1(c)(8), but (d) have been or will be denied such release pursuant to DHS's blanket policy of denying release to detained families without conducting an individualized determination of flight risk or danger to the community.

Dated: December 16, 2014

Respectfully submitted,

Judy Rabinovitz
Michael K.T. Tan
Anand V. Balakrishnan
Lindsay Nash
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618

Dennis B. Auerbach (D.C. Bar No. 418982)
David M. Zionts (D.C. Bar. No. 995170)
Philip Levitz (D.C. Bar No. 1018430)
Sonia Lahr-Pastor*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C.  20001–4956
(202) 662-6000

Stephen B. Kang
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0783

Arthur B. Spitzer (D.C. Bar. No. 235960)
AMERICAN CIVIL LIBERTIES UNION OF THE
NATION'S CAPITAL
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
(202) 457-0800

Witold J. Walczak
ACLU OF PENNSYLVANIA
313 Atwood Street
Pittsburgh, PA 15213
(412) 681-7864

Molly Tack-Hooper
ACLU OF PENNSYLVANIA
P.O.  Box 40008
Philadelphia, PA 19106
(215) 592-1513 x 113

Denise Gilman
IMMIGRATION CLINIC
UNIVERSITY OF TEXAS SCHOOL OF LAW
727 E. Dean Keeton St.
Austin, TX 78705
(512) 232-1292

Adriana Piñon
Rebecca L. Robertson
ACLU OF TEXAS
1500 McGowen Street, Suite 250
Houston, Texas 77004
 (713) 942-8146

*Admitted to the Bar of the Commonwealth of
Pennsylvania, admission to the Bar of the
District of Columbia pending, and supervised
by the principals of the firm.