UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| R.I.L.R., *et al.*, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:15-cv-00011-JEB |
| JEH JOHNSON, Secretary of Homeland Security, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs filed an amended complaint and a motion for preliminary injunction asking the Court to enjoin Defendants from applying what Plaintiffs allege is a "blanket No-Release Policy for detained Central American families in order to deter additional migrants from coming to the United States."  (Am. Compl., ECF No. 8, January 8, 2015, ¶ 5.)   The Court should deny the motion for preliminary injunction and dismiss Plaintiffs' amended complaint because it fails on each of the three basic elements required for filing a lawsuit: 1) it does not contain claims this Court has jurisdiction to consider; 2) it does not state a claim that Defendants are violating any specific provision of law; and 3) it challenges a policy that does not exist in order to obtain equitable relief that is not possible for the Court to grant or to enforce.   In addition, the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and its implementing regulations provide clear administrative avenues for Plaintiffs to challenge their detention, precluding review here under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et*

*seq.* Review is also precluded under the APA because Plaintiffs are not challenging a final agency action, but rather are challenging a determination that has been committed to ICE's discretion by statute. For all of these reasons, Plaintiffs' Amended Complaint should be dismissed. Moreover, Plaintiffs fall far short of demonstrating their entitlement to the extraordinary relief they are seeking and their preliminary injunction motion should be denied.

## BACKGROUND

For the purposes of this opposition and motion, Defendants assume as true the facts alleged in the amended complaint, unless otherwise indicated. Plaintiffs are ten individual members of family groups who were apprehended by the U.S. Department of Homeland Security ("DHS") after illegally entering the United States. (Am. Compl. ¶¶ 58, 67, 75, 83.) After screening by U.S. Immigration and Customs Enforcement ("ICE"), 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. §§ 208.30, 235.3(b)(4), and by an immigration judge if such review was requested, 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42(d), each Plaintiff has been found to have a credible fear of persecution and has been placed into immigration removal proceedings before an immigration judge under 8 U.S.C. § 1229a. (Am. Compl. ¶¶ 59, 68, 77, 84); 8 C.F.R. § 208.30(f).

Once an individual alien has been found to have a credible fear of persecution or torture and placed into non-expedited immigration proceedings before an immigration judge under 8 U.S.C. § 1229a, the authority for his or her detention falls under 8 U.S.C. § 1226(a). *See Matter of X-K-*, 23 I. & N. Dec. 731, 735-36 (BIA 2005) (holding that current DHS regulations do not bar an immigration judge from making custody re-determinations of a person subject to expedited removal if he or she is determined to have a credible fear and placed in removal proceedings under 8 U.S.C. § 1229a, and if a bond is not otherwise precluded by 8 C.F.R. §

1003.19(h)(2)(i)).  That statute provides that "the Attorney General—(1) may continue to detain the arrested alien; and (2) may release the alien on [bond of at least $1,500 or conditional parole] . . . ."  8 U.S.C. § 1226(a).  ICE makes the initial determination regarding release under this statute, and the ICE officer making the custody determination "may, in the officer's discretion, release" the individual, "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  In the case of each individual Plaintiff, the initial custody determination made by ICE in its exercise of discretion, was to maintain custody of these individuals.  *See* Am. Compl. ¶¶ 60, 69, 77, 85; Form I-286, Notices of Custody Determination for Plaintiffs, attached hereto as Exhibit A.

An alien who is in removal proceedings before an immigration judge, and who has not yet received a final order of removal, may appeal ICE's initial custody determination to an immigration judge.  8 C.F.R. §§ 1236.1(c)(10) and (d)(1).  In the case of such an appeal, "the immigration judge is authorized to exercise the authority in [8 U.S.C. § 1226] to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the alien may be released . . . ."  8 C.F.R. § 1236.1(d)(1); *see also*  8 C.F.R. § 1003.19(a).  An alien may also take an appeal to the Board of Immigration Appeals ("BIA") from any decision of the immigration judge.  8 C.F.R. § 1236.1(d)(3)(i).

At the time of the filing of the amended complaint, eight of the ten named Plaintiffs had requested and received bond hearings before an immigration judge, and been released on bond.  (Am. Compl. ¶¶ 65, 73, 81.); Exh. A.  The remaining two Plaintiffs were scheduled for a bond hearing on January 14, 2015, and have since been granted bond by an immigration judge.  *See* Am. Compl. ¶ 90.; Custody Orders of the Immigration Judge for Plaintiffs G.C.R. and J.A.R.,

Jan. 14, 2015, attached hereto as Exhibits B and C.  Each of the Plaintiffs who have been released was released on a bond of greater than the statutory minimum amount of $1,500, indicating that the immigration judges adjudicating their claims also viewed them as a potential flight risk or threat to national security.  *See* Am. Compl. ¶¶ 12-14.; 8 U.S.C. § 1226(a)(2)(A); *Matter of Patel*, 15 I. & N. Dec. 666 (BIA 1976) ("An alien generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security . . ., or that he is a poor bail risk . . . .") (citations omitted).

## STANDARDS OF REVIEW

### I.    Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction

Under Rule 12(b)(1), a plaintiff invoking the jurisdiction of a federal court bears the burden of establishing that the court has jurisdiction.  *See U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)); *see also Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("[A] Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  While a court must accept as true all of the petitioner's factual allegations when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *see Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), "'factual allegations  . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge*, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990)).  The plaintiffs' complaint should be construed liberally, and the plaintiffs should receive the benefit of all favorable inferences that can be drawn from the

alleged facts.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Additionally, the court may consider material other than the allegations in the complaint in determining whether it has jurisdiction to hear the case.  *See Jerome Stevens Pharmaceuticals, Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624-25 n. 3; *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## II.    Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Further, when evaluating a motion to dismiss under Rule 12(b)(6), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party.  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006).  But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."  *Twombly*, 550 U.S. at 557.  Accordingly, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## III.    Standard of Review of Motions for Preliminary Injunction

This court may issue a preliminary injunction only when the movant demonstrates that:

(1) there is a substantial likelihood plaintiff will succeed on the merits;
(2) plaintiff will be irreparably injured if an injunction is not granted;

(3) an injunction will not substantially injure the other party; and

(4) the public interest will be furthered by an injunction.

*Barton v. District of Colum.*, 131 F. Supp. 2d 236, 241 (D.D.C. 2001) (quoting *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998)); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011; *Banks v. Harrison*, 864 F. Supp. 2d 142, 145 (D.D.C. 2012). Traditionally, courts have analyzed those factors on a "sliding scale," balancing them against each other. *Barton*, 131 F. Supp. 2d at 241 (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)) (citations and quotation omitted). Under that approach, the "four factors are not considered in isolation from one another, and no one factor is necessarily dispositive as to whether preliminary injunctive relief is warranted." *Id.* But, "[r]ecently, the continued validity of that approach has been called into some doubt, as the . . . [D.C.] Circuit has suggested, without holding, that a likelihood of success on the merits is an independent free-standing requirement for a preliminary injunction." *TD Bank NA v. Pearl*, 891 F. Supp. 2d 103, 106 (D.D.C. 2012). Judges in this Circuit have also suggested that "a party moving for a preliminary injunction must meet [all] four independent requirements." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J. & Henderson, J., concurring). The Court need not resolve that open question here because Plaintiffs' claims do not satisfy either standard.

## ARGUMENT

## I. 8 U.S.C. § 1226(e) Deprives this Court of Jurisdiction Over Plaintiffs' Claims.

Although Plaintiffs' amended complaint contains five enumerated claims, s*ee* Am. Compl. ¶¶ 102-15, there are essentially two substantive challenges presented in this lawsuit: 1) a challenge under the APA to a purported "No-Release Policy" that Plaintiffs allege requires ICE

to detain Plaintiffs and other similarly situated aliens (Counts One, Two, Three, and Four); and 2) a constitutional challenge to the purported policy (Count Five). (Am. Compl. ¶¶ 102-15.) Setting aside for the moment that, as discussed more fully below, Plaintiffs' entire lawsuit is based on a non-existent "No-Release Policy," this case asserts claims that are plainly barred under 8 U.S.C. § 1226(e) and this Court lacks subject matter jurisdiction to consider the merits of Plaintiffs' erroneous factual and legal claims. On the basis of lack of jurisdiction alone, this case should be dismissed, and the Court's inquiry need not go any further.

Specifically, the plain and unambiguous language of 8 U.S.C. § 1226(e) deprives this Court of subject matter jurisdiction over Plaintiffs' claims. This section provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

*Id.*[1] Courts interpreting this statute have noted that Congress directly addressed claims such as Plaintiffs' when it enacted Section 1226(e), depriving federal courts of jurisdiction to review discretionary detention decisions made by the Executive Branch like the ones Plaintiffs challenge here. *See, e.g., Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008) (noting that discretionary decisions granting or denying bond not subject to judicial review); *Pisciotta v. Ashcroft*, 311 F. Supp. 2d 445, 453 (D.N.J. 2004) (holding that district court lacked jurisdiction to review decision to detain without bond); *Hatami v. Chertoff*, 467 F. Supp. 2d 637, 639-40

---

[1] Until 2003, the Immigration and Naturalization Service ("INS"), a division of the U.S. Department of Justice, carried out many of the immigration functions that are today performed by DHS. On March 1, 2003, many immigration functions vested in the Attorney General (and delegated to the INS) were transferred to the Secretary of Homeland Security, and the INS was abolished. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (Nov. 25, 2002). Those immigration functions are now vested in the Secretary of Homeland Security, and distributed among three separate DHS components: U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, and U.S. Citizenship and Immigration Services.

(E.D. Va. 2006) (holding that district court lacked jurisdiction to review decision regarding detention or release absent challenge to statutory framework allowing detention).

Plaintiffs readily acknowledge (as they must) that they were detained pursuant to the discretionary authority of the Secretary of Homeland Security under 8 U.S.C. § 1226(a).  (Am. Compl. ¶ 42.)  Because 8 U.S.C. § 1226(e) prohibits judicial review of such discretionary determinations, this Court lacks jurisdiction over any of Plaintiffs' challenges to this detention under the APA, and those claims should be dismissed.  *See Prieto-Romero*, 534 F.3d at 1058; *Pisciotta*, 311 F. Supp. 2d at 453; *Hatami*, 467 F. Supp. 2d at 639-40.

In their motion for preliminary injunction, Plaintiffs relegate their discussion of this jurisdictional bar to their claims to two paragraphs buried on pages 28 and 29 of their memorandum.  (*See* Pl. Mem. in Support of Am. Mot. for Prelim. Inj. [ECF No. 9-1] at 28-29.) Each and every case Plaintiffs cite in support of their argument, however, does not address persons detained under the discretionary authority of 8 U.S.C. § 1226(a), but rather addresses the mandatory detention of persons convicted of a crime under 8 U.S.C. § 1226(c), or addresses a petition for *habeas corpus* – relief that Plaintiffs adamantly and repeatedly stress (*see id.* at 27-28 (discussing why Plaintiffs should not be forced to seek *habeas* relief)), they are *not* seeking.  (*See id.* at 29 n.22 (citing *Castaneda v. Souza*, 769 F.3d 32, 41 (1st Cir. 2014) (§ 1226(c) case where petitioners sought writ of *habeas corpus*); *Sylvain v. Att'y Gen. of United States*, 714 F.3d 150, 156 (3rd Cir. 2013) (§ 1226(c) case); *Singh v. Holder*, 638 F.3d 1196, 1200-03 (9th Cir. 2011) (petition for *habeas corpus* after mandatory detention); *Al–Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008) (petition for *habeas corpus* after immigration judge issued order allowing release upon posting of bond and allegations of refusal to allow petitioner to post bond).)  Thus, Plaintiffs' two-paragraph argument, citing cases entirely unrelated to the allegations in their

complaint, fails to save their APA claims from the jurisdictional bar that Congress set forth in § 1226(e).

In fact, only Plaintiffs' fifth (due process) claim comes close to surviving the jurisdictional bar because courts have held that constitutional challenges to the statutory framework allowing detention are not automatically barred by § 1226(e), but may be reviewed for constitutional and legal error.  *See*, *e.g.*, *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) ("It is now clear that 'a federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review *Casas-Castrillon* bond hearing determinations for constitutional claims and legal error.'") (quoting *Singh*, 638 F.3d at 1200-01).  For Plaintiffs to bring this type of claim, however, they must seek *habeas* relief.  *See id.*; *see also Castaneda*, 769 F.3d at 41; *Sylvain*, 714 F.3d at 156.  This requirement bars Plaintiffs' complaint for two reasons.

First, as discussed immediately above, Plaintiffs have specifically and forcefully argued that their complaint does *not* seek *habeas* relief and therefore Plaintiffs cannot avail themselves of this exception.  (*See* Pl. Memo. in Support of Am. Mot. for Prelim. Inj. [ECF No. 9-1] at 27-28 (discussing why Plaintiffs should not be forced to seek *habeas* relief).)  Second, if Plaintiffs do attempt to seek *habeas* relief pursuant to the federal statute, 28 U.S.C. § 2241, this Court should dismiss for improper venue or, alternatively, transfer this matter to the Southern District of Texas.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 435-36 & n.8 (2004) (noting that while applicability of immediate custodian rule mandating that *habeas* cases be brought in district where petitioner is detained is an open question in immigration cases, the majority of circuits to address the issue have held that immediate custodian rule does apply); *see also Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945) ("[T]he Attorney General is not the person directly responsible for the operation of our federal penitentiaries[; a]n interpretation which would permit

resort to the courts in the District of Columbia for writs of habeas corpus by prisoners in federal institutions all over the United States is without justification either in convenience or logic."). Thus, because Congress has expressly and specifically barred claims such as those brought by Plaintiffs from being heard in the federal courts, and because any potentially viable claims Plaintiffs might have are not properly brought in this venue, Plaintiffs' entire complaint should be dismissed.

II.    **This Court Lacks Jurisdiction Because Plaintiffs Lack Standing and Because Their Claims are Now Moot.**

a.    At the Time the Amended Complaint Was Filed, Plaintiffs Lacked Standing to Pursue Their Claims.

"To satisfy the 'case' or 'controversy' requirement of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–472 (1982)).   Plaintiffs lack standing first and foremost because, as explained in Section III below, each of them in fact received an individualized custody determination from ICE in which permissible discretionary considerations were evaluated, and thus they have not suffered any "injury in fact."

Second, at least eight of the Plaintiffs also lack standing because they fail to allege at the time of the filing of the amended complaint that the injury about which they complain is likely to be redressed by a favorable decision from this Court.  The injury they allege is the brief period of detention they experienced after ICE determined that they should remain in custody, and before

they received a custody redetermination by an immigration judge.  But at the time Plaintiffs filed their amended complaint, eight of the ten Plaintiffs had been released from Defendants' custody, and therefore there is no injunctive relief that this Court could have ordered at that time that would redress the past injury Plaintiffs allege they had suffered.

Third, with regard to all ten of the Plaintiffs, none of them has sufficiently alleged that the injury about which they complain would "likely" be redressed by a favorable decision from this Court.  Again, the injury about which Plaintiffs complain is their brief period of custody after ICE's custody determination, and they allege myriad harms resulting from that period (*see* Am. Compl. [ECF No. 8] at ¶¶ 91-101).  However, they acknowledge that they "do not seek orders of release of individuals subjected to the [purported] No-Release Policy, but simply ask the Court to invalidate the blanket policy, and to require Defendants to provide the individualized custody determinations based on flight risk and danger to the community that the statute and regulations require."  (Am. Compl. [ECF No. 8] at 4, ¶ 7.)  Thus on the face of the Amended Complaint, the relief Plaintiffs seek (individualized considerations from ICE) does not clearly address the harm Plaintiffs allege they are suffering (detention).  Plaintiffs do not explain anywhere in their Amended Complaint, let alone with any specificity, how providing individualized considerations would be "likely" to redress the injury of detention.

In fact, the possibility that Plaintiffs' requested relief would redress the harms they allege they have suffered from the brief period of custody at issue is nothing more than speculative, and this provides good reason for the Court to dismiss their claims for lack of standing.  *America's Community Bankers v. FDIC*, 200 F.3d 822, 827 (D.C. Cir. 2000) (Plaintiffs must demonstrate redressibility by "establish[ing] that it is likely, as opposed to merely speculative, that a favorable decision by this court will redress the injury suffered.") (citation omitted).  Although

Plaintiffs contest Defendants' consideration of certain factors in ICE's custody determinations, Plaintiffs provide no basis to find that a different consideration of these factors would "likely" result in the release of any individual Plaintiff.  Even though immigration judges have ordered all of the Plaintiffs released on bond, notably each of the Plaintiffs was released on a bond of greater than the statutory minimum amount of $1,500, indicating that the immigration judges adjudicating their claims also viewed them as a potential flight risk or threat to national security.  *See* (Am. Compl. ¶¶ 12-14.); 8 U.S.C. § 1226(a)(2)(A); *Matter of Patel*, 15 I. & N. Dec. at 666.  Where Plaintiffs can do nothing more than speculate that the relief they seek would redress the harms they allege they have suffered, this Court should dismiss their claims for lack of standing.

b.  <u>All Plaintiffs' Claims are Now Moot.</u>

Additionally, regardless of initial standing, all Plaintiffs' claims have now become moot, and the Court also may dismiss them on that basis.  It is incontrovertible that all Plaintiffs have received a bond determination hearing before an immigration judge.  (Am. Compl. ¶¶ 65, 73, 81, 90); Exhs B and C.  All of them have been granted bond by the immigration judge, and eight have already been released either on recognizance (in the case of children released with their mothers) or after payment of a bond (in the case of their mothers), and there is therefore no further relief that this Court can provide them.  A case is considered moot either "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); s*ee also Pharmachemie B.V. v. Barr Labs.*, 276 F.3d 627, 631 (D.C. Cir. 2002) (case becomes moot when "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.").  Because federal courts are courts of limited jurisdiction, "a federal court has no authority to give opinions upon moot questions or abstract propositions, or

to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). Here, Plaintiffs' claims are defeated because they have been released from Defendants' custody or, at a minimum, have been granted bond by an immigration judge, and there is no further relief that this Court can grant them. Thus, Plaintiffs' complaint should be dismissed because Plaintiffs' claims are moot. *See*, *e.g.*, *Amer. Bar Ass'n v. F.T.C.*, 636 F.3d 641, 645-46 (D.C. Cir. 2011) ("The mootness doctrine, deriving from Article III, limits federal courts to deciding actual, ongoing controversies. Even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.").[2]

### III. Plaintiffs Fail to State Any Claim Because They Have Not Actually Alleged That Any "No-Release Policy" Exists.

Even if the Court were to determine that it had jurisdiction to reach the merits of Plaintiffs' claims, this does not cure the second fundamental flaw of this lawsuit which is that there is absolutely no "No-Release Policy" in place which precludes the release of individuals in Defendants' custody at ICE family residential centers. To start, nowhere in Plaintiffs' Amended

---

[2] Plaintiffs have also indicated that they believe their class action claims fall under the narrow exception to mootness carved out by the Supreme Court in *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975), and applied in *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991). While this issue need not be addressed here due to the Court's Minute Order of Jan. 9, 2015 deferring resolution of the class certification issue until resolution of these initial matters, Plaintiffs' belief that they qualify for the narrow exception is simply incorrect. Unlike the plaintiffs in *McLaughlin*, none of the Plaintiffs here can claim "relation back" because when the amended complaint was filed, each of the Plaintiffs either had received or was scheduled to receive the very individualized determination they are seeking. *Cf. McLaughlin*, 500 U.S. at 51 ("[A]t the time the second amended complaint was filed, plaintiffs James, Simon, and Hyde had been arrested without warrants and were being held in custody without having received a probable cause determination, prompt or otherwise. Plaintiffs alleged in their complaint that they were suffering a direct and current injury as a result of this detention, and would continue to suffer that injury until they received the probable cause determination to which they were entitled."). This inability of *any* of the Plaintiffs to claim eligibility for relief at the time of filing precludes the Plaintiffs from seeking the narrow "transitory class" exception.

Complaint do they allege that *100%* of individuals who receive an ICE custody determination under 8 U.S.C. § 1226(a) remain in ICE custody.  In fact, what Plaintiffs allege is that "DHS has denied release to *nearly every family* that is detained at a family detention facility and has passed a credible fear interview . . . ."  (Am. Compl. [ECF No. 8] ¶ 45.)  Plaintiffs' acknowledgement that there may be even a few exceptions belies their allegations of a "blanket" policy.  Moreover, the reality is that between June 1, 2014 and December 16, 2014, 126 aliens have been released from custody at ICE family residential centers as a result of ICE custody reviews.  *See* Declaration of Marla Jones, Jan. 23, 2015, at ¶ 6, attached hereto as Exhibit D.  To the extent that Plaintiffs are dissatisfied with the number of people being released from ICE family residential centers as a result of ICE custody reviews, the fact remains that they simply cannot mount a broad challenge to ICE's discretionary determination in individual cases that public safety would be better served by temporarily detaining certain aliens who illegally crossed the border during a period of mass migration, rather than by permitting them to enter with impunity.

Moreover, Plaintiffs have cited no regulation, policy memo, or government document enumerating the "No-Release Policy" in support of their contention that such a policy is being applied.  In fact, the "No-Release Policy" at the heart of Plaintiffs' amended complaint does not exist; what exists is the valid consideration by ICE of permissible discretionary factors in making custody determinations with regard to certain individual aliens.  *See generally Matter of D-J*, 23 I. & N. Dec. 572 (BIA 2003).  In *Matter of D-J-*, the Attorney General considered whether an individual should be released on bond, where the INS contended that his release created a risk to national security because it would encourage future unlawful mass migration.  In concluding that the individual should remain detained, the Attorney General first noted that while 8 U.S.C. § 1226(a) gave the INS discretion to release any individual who fell under that provision, that

section "does not give detained aliens any *right* to release on bond. Rather, the statute merely gives the Attorney General the authority to grant bond *if* he concludes, in the exercise of broad discretion, that the alien's release on bond is warranted." 22 I. & N. Dec. at 575 (citing *Carlson v. Landon*, 342 U.S. 524, 534 (1952)); *see also Carlson*, 342 U.S. at 539-40 (noting that the addition of the language "in the discretion of the Attorney General" to an earlier iteration of the statute providing for release of aliens on bail meant that the statute "does not grant bail as a matter of right[]").

The decision then went on to consider the position of the INS that detention of the individual alien at issue was necessary to deter future mass migration of individuals from Haiti, and that such mass migration raised national security concerns because it put "strains on national and homeland security resources[,]" and placed the lives of the aliens themselves at risk. *Id.* at 577-579. After reviewing these considerations, the Attorney General concluded that "releasing respondent, or similarly situated undocumented seagoing migrants, on bond would give rise to adverse consequences for national security and sound immigration policy." *Id.* at 579. Thus, under *Matter of D-J-*, considering the effects of mass migration on national security is a permissible exercise of discretion in making a custody determination under 8 U.S.C. § 1226(a). Moreover, ICE is required to follow *Matter of D-J-* as a precedent decision of the Attorney General. *See* 8 C.F.R. § 1003.1(g); *see also Marmolejo-Campos v. Holder*, 558 F.3d 903, 922 n.5 (9th Cir. 2009) (explaining the designation of precedential decisions by the Board of Immigration Appeals and the Attorney General). This Court should also give deference to *Matter of D-J-* to the extent it reflects the Attorney General's interpretation of the discretionary authority granted to ICE and to immigration judges in considering release under 8 U.S.C. § 1226(a). *See United States v. Yakou*, 428 F.3d 241, 247-48 (D.C. Cir. 2005) (noting that "BIA

decisions are binding on all immigration judges and officers and employees of the Department of Homeland Security" and that principles of *Chevron* deference also require federal courts to defer to decisions by the BIA and the Attorney General interpreting the immigration laws).

Ultimately, it is clear that contrary to Plaintiffs' assertions, the issue in this case is not that Defendants are failing to evaluate any individual alien's risk of flight and future dangerousness in reaching its custodial determinations. Rather, the issue is the Plaintiffs want Defendants to look at and rely on **only** these two factors, which is neither required by the statute or regulations, nor contemplated by Congress, who wanted custodial officers to make discretionary decisions based on the totality of factors, including whether the factors supporting relief are outweighed by the negative systemic impact caused by permitting release in a specific case.  *See Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006) ("[T]he Act does not limit the discretionary factors that may be considered by the Attorney General in determining whether to detain an alien pending a decision on asylum or removal.").

Plaintiffs themselves cite to *Matter of Z-R- & C-Z-*, for the proposition that "DHS attorneys [who serve as counsel for the Government in immigration court] are taking a 'no bond or high bond' position" in bond reconsideration hearings before the immigration judge.  (*See* Pl. Memo. in Support of Am. Mot. for Prelim. Inj. [ECF No.9-1], at 7, and Exhibit 7 [ECF No. 9-13].)  In fact the immigration judge in that case did note that DHS attorneys had taken that position at bond hearings, but that decision also helpfully goes on to discuss *Matter of D-J-* and note that it "clearly states that concerns raised by mass migrations, when supported by the proper evidence, can give rise to broad denials of bond in an exercise of the discretionary authority of the Attorney General."  *Matter of Z-R- & C-Z-*, ECF No. 9-13 at 6.  The immigration judge in that case denied bond after finding that "Respondents' situation presents similar national security

concerns to those noted in *Matter of D-J-*." *See id.* (making this finding based on the evidence packet, including the Declarations of Philip T. Miller and Tracy A. Lembke, that ICE attorneys use in support of their arguments against release in immigration court bond hearings). Just as ICE may consider these national security concerns in exercising its discretion, the immigration judges also may consider this as a discretionary factor in a subsequent bond hearing, following the precedent of *Matter of D-J-*. In both cases this is a permissible exercise of the discretion granted to ICE and to immigration judges to determine custody under 8 U.S.C. § 1226(a).

Plaintiffs' only support for their contention that Defendants are applying an impermissible "No-Release Policy" is their allegation that Defendants are considering this very factor found to be a permissible discretionary consideration in *Matter of D-J-*. The Court therefore should dismiss the complaint in its entirety because Plaintiffs have failed to allege that any "No-Release Policy" actually exists.

## IV. Plaintiffs Fail to State a Claim for a Denial of Any Due Process Rights.

Additionally, Plaintiffs' constitutional claim should be dismissed because they fail to allege that they have been denied any due process rights to which they may be entitled. Plaintiffs do not actually contend that they are not receiving a custody determination from ICE, and they cannot do so because their individualized custody determinations are evidenced by their Form I-286, Notices of Custody Determination, that ICE issues in each instance where it makes such a determination. *See* Exh. A. Rather, Plaintiffs allege that consideration of a factor (national security risk related to mass migration) not favored by Plaintiffs as part of the overall custody determination constitutes a generalized policy that denies them what they claim is a due process right to an individualized consideration of their continued detention. Bet even assuming that Plaintiffs have any due process right to an individualized custody determination, their argument

still fails because there is simply no good reason to make the leap of logic that Plaintiffs' are not receiving individualized custody determinations simply because generalized discretionary factors are also included in the analysis.

To start, Plaintiffs have extremely limited, if any, due process rights regarding these custody determinations.  In *Matter of D-J-*, the Attorney General considered and rejected the petitioner's argument that consideration of the effect of mass migration on national security concerns denied the alien an "individualized consideration" of his request for release, and therefore violated his due process rights.  23 I. & N. Dec. at 582-83.  The decision rejected this argument first on the ground that the alien in that case had not been admitted to the United States, and therefore had more limited due process rights than an individual who had been lawfully admitted to the United States.  *Id.* at 582-83.

Plaintiffs dispute that this principle applies.  (*See* Pl. Memo. in Support of Am. Mot. for Prelim. Inj. [ECF No. 9-1] at 15 n.13)[3]  However, the principle that those who have not been admitted to the United States enjoy only limited due process rights with regard to their applications for admission has been upheld in this Circuit.  *See Kiyemba v. Obama*, 555 F.3d 1022, 1026-27 (D.C. Cir. 2009) ("Decisions of the Supreme Court and of this court . . . hold that the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States.") (citing multiple cases dating back to 1950).  And it applies to Plaintiffs because, under 8 U.S.C. § 1225, they are "assimilated" to the status of "arriving aliens"

---

[3] Contrary to Plaintiffs' assertions, the decision did, in fact, consider and distinguish *Zadvydas*.  *See id.* at 583 (citing *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001)) ("As an alien who has 'not yet gained initial admission to the United States,' he does not qualify for the limited due process protection extended to 'admitted' aliens under the sharply distinguishable circumstances presented in [*Zadvydas*]."); *see also Zadvydas*, 533 U.S. at 682 ("We deal here with aliens who were admitted to the United States but subsequently ordered removed.  Aliens who have not yet gained initial admission to this country would present a very different question."); *id.* at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

who are standing at the threshold of entry for constitutional purposes. *See Kwong Hai Chew v. Colding*, 344 U.S. 590, 591-92, 598-99 (1953) (finding regulation permitting exclusion without hearing constitutional by limiting reach of regulation to "entrant aliens and to those assimilated to their status"); *accord Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 214 (1953) (upholding 19 month detention of arriving alien who was lawful permanent resident (LPR) when he left the United States because "[i]n such circumstances we have no difficulty in holding respondent an entrant alien or assimilated to that status for constitutional purposes"). Thus for Plaintiffs, "[w]hatever the procedure authorized by Congress is, it is due process . . . ." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *accord Rafeedie v. INS*, 880 F.2d 506, 520 (D.C. Cir. 1989) ("[A]n initial entrant has no liberty (or other) interest in entering the United States, and thus has no constitutional right to any process in that context; whatever Congress by statute provides is obviously sufficient, so far as the Constitution goes."); *M.S.P.C. v. U.S. Customs and Border Protection*, --- F. Supp. 3d ---, 2014 WL 6476125, at *16-17 (D.N.M. Oct. 16, 2014) ("Petitioner, who undisputedly crossed approximately nine miles over the border and was apprehended within 30 minutes of crossing, does not have any substantial ties to this country to place the nature of her rights near those of a permanent resident. Thus, for purposes of the constitutional right to due process, Petitioner's status is assimilated to that of an arriving alien. . . . Accordingly, Petitioner has no constitutional due process rights in relation to her admission beyond that authorized by Congress.").

In any event, regardless of whether Plaintiffs have any constitutional due process rights in this circumstance, they have not stated a claim for any constitutional violation because they have not shown that they have been deprived of an individualized custody determination or otherwise

deprived of procedural due process protections.   In *Matter of D-J-*, the Attorney General concluded that:

> Even if the respondent were entitled to an individualized hearing . . ., such a conclusion would not support a contention that this respondent's request for release on bond must be determined exclusively on the basis of his individual situation, rather than on the basis of general considerations applicable to a category of migrants, as a matter of constitutional due process.  The mere fact that general considerations are introduced does not negate the individual nature of the hearing.

*Id.* at 583.  The same logic applies here.  Plaintiffs do not actually contend that they are not receiving a custody determination from ICE, only that consideration of this generalized factor as part of the custody determination constitutes a generalized policy that denies them an individualized consideration.  As found by the Attorney General in *Matter of D-J-*, however, it is not true that consideration of a generalized factor as part of a discretionary determination means that individualized factors are not also being considered, or that an individualized determination is not being made.  In addition, each Plaintiff is entitled to – and has received – an individualized determination from an immigration judge, and may appeal that determination to the BIA.  *See* 8 C.F.R. § 1236.1(d)(1) and (d)(3)(i); 8 C.F.R. § 1003.19(a).  Thus Plaintiffs have not established and cannot establish that they are being denied any procedural due process rights.

Plaintiffs' reliance on *Zadvydas v. Davis,* 533 U.S. 678 (2001), for their contention that Plaintiffs' detention "presents serious constitutional problems" is also misplaced.   (*See* Pl. Memo. in Support of Am. Mot. for Prelim. Inj. [ECF No. 9-1]  at 14.)  In *Zadvydas* the Court looked at post-order detention under 8 U.S.C. § 1231, and considered whether discretionary detention under that statute was constitutional for two aliens who had been ordered removed, but whom the Government nonetheless was unable to remove.  533 U.S. at 684-86.  This scenario subjected them to potentially indefinite detention, with only limited administrative review (*see*

*id.* at 692), and the Court therefore noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. Thus, the Court concluded that the discretionary power of the Government to detain aliens under that statute must be limited to "avoid a serious constitutional threat . . . ." *Id.* at 699. Notably, in reaching its conclusion the Court distinguished post-order detention from detention during removal proceedings, noting that "post-removal-period detention, unlike detention pending a determination of removability or during the subsequent 90–day removal period, has no obvious termination point." *Id.* at 697. Here, Plaintiffs and other aliens detained under section 1226(a) are detained only during the pendency of their removal proceedings and may receive independent review of their detention from an immigration judge within days of the initial decision by ICE, thus the same constitutional concerns are not implicated and *Zadvydas* does not support Plaintiffs' constitutional claims.

V.    **Plaintiffs Fail to State a Claim Under the Administrative Procedure Act.**

a.    Plaintiffs fail to state a claim under the Administrative Procedure Act because they are not challenging a final agency action in this case.[4]

Under the APA, "[a]gency action made reviewable by statute *and final agency action for which there is no adequate remedy in a court*" is subject to judicial review. 5 U.S.C. § 704 (emphasis added). Where, as here, the agency action at issue is not made reviewable by statute

---

[4] The case law in this circuit is split on the issue of whether the requirement of a final agency action under the APA is jurisdictional. Some panels have held that the lack of a final agency action precludes the district court from reaching the merits because the court lacks jurisdiction over non-final actions. *See Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001). Other panels have concluded that the issue of whether an agency action is final under the APA is not jurisdictional. *See Vietnam Veterans of America v. Shinseki*, 599 F.3d 654, 661 (D.C. Cir. 2010). Notwithstanding this unresolved issue, the reasoning of *Sierra Club v. Peterson*, 717 F.2d 1409 (D.C. Cir. 1983) and *Arden Wood, Inc. v. U.S. Citizenship and Immigration Servs.*, 480 F. Supp. 2d 141 (D.D.C. 2007), and their bases for dismissing plaintiffs' suits in those cases, is sound in this circuit, as plaintiffs must challenge a final agency action in order to state a claim under the APA. *See Reliable Automatic Sprinkler v. Consumer Products Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("We need not dwell on this issue, for it raises a question of no significance in this case. If there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA. Therefore, even though there was no basis for dismissal under Rule 12(b)(1), we may properly affirm the District Court's judgment pursuant to Rule 12(b)(6)").

and there is no final agency action, Plaintiffs fail to state a cause of action under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"); *see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2006); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005). Consequently, Plaintiffs allegations fail the test for finality under *Bennett v. Spears,* 520 U.S. 154 (1997).

The discretionary determinations of ICE that Plaintiffs refer to as a "No-Release Policy" do not constitute a "final agency action" that may be reviewed under the APA. As an initial matter, Plaintiffs have pointed to no regulation, letter, memorandum, or other form of written material that comprises this policy that they allege is being applied by Defendants.[5] This failure alone is fatal to Plaintiffs' claims. *See Bark v. United States Forest Service*, --- F. Supp. 2d ----, Civ. No. 12-1505 (RC), 2014 WL 1289446, at *6 (D.D.C., Mar. 28, 2014) ("Plaintiffs point to no written rules, orders, or even guidance documents of the Forest Service that set forth the supposed policies challenged here. Instead, Plaintiffs appear to have attached a 'policy' label to their own amorphous description of the Forest Service's practices. But a final agency action requires more."). Plaintiffs have taken it upon themselves to define ICE's consideration of certain national security concerns in making custody determinations on a case-by-case basis as a "No-Release Policy," but as in *Bark*, this amorphous description by Plaintiffs does not suffice to establish a final agency action.

---

[5] Plaintiffs' citation to the Declarations of Philip T. Miller and Tracy A. Lembke as evidence of an ICE policy is misplaced. The declarations do not discuss ICE's initial custody determination at all. Instead, as discussed by the immigration judge in *Matter of Z-R- & C-Z-*, ECF No. 9-13 at 4-6, they are just one part of an evidence packet that is used to support DHS attorney arguments against release in immigration court bond hearings.

Rather than complaining of any discrete agency action or decision, Plaintiffs in fact complain generally that Defendants are engaging in an ongoing policy of denying bond in custody determinations made for individuals who fall within their suggested class definition. (*See* Am. Compl ¶ 45 ("DHS has denied release to nearly every family that is detained at a family detention facility and has passed a credible fear interview . . . .").) Plaintiffs do not allege that they, or individuals similarly situated, are not getting custody determinations by ICE. Moreover, Plaintiffs do not explain why they believe this purported policy was to blame for the custodial determination in their particular cases. Rather, they allege that in making each such determination, ICE is not considering "whether their detention is warranted based on flight risk of danger to the community[,]" and instead is making the decision to detain each individual in order to deter future illegal mass migration. (Am. Compl. ¶ 40.) These allegations do not satisfy the requirement for a final agency action under the APA.

These claims constitute a generalized complaint that the agency is not properly exercising its discretion in making its custody determinations for Plaintiffs and other putative class members. But a complaint about the agency's purported unwritten general policy with regard to the factors to be considered by ICE agents exercising the agency's discretion in each individual case is a "'generalized complaint about agency behavior' that gives rise to no cause of action." *Bark*, 2014 WL 1289446, at *6 (quoting *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006)). "While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA." *See Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (citing *Lujan*, 497 U.S. at 890). Plaintiffs cannot bring programmatic challenges under the APA, and the limitation to "discrete" agency action, precludes this sort of a "broad programmatic attack." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004);

*see also Lujan*, 497 U.S. at 891 ("But respondent cannot seek wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm.").   The purported "No-Release Policy" about which Plaintiffs complain is in fact a consideration of permissible discretionary factors in an ongoing decision-making process by ICE, and Plaintiffs therefore have identified no final agency action that may be reviewed under the APA.

    b.   <u>Plaintiffs fail to state a claim under the APA because Defendants' custody determinations are committed to agency discretion by law.</u>

Judicial review under the APA is unavailable in situations where the agency action complained of "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  Plaintiffs' amended complaint seeks to challenge the custody determinations made by ICE for Plaintiffs and other similarly situated individuals under 8 U.S.C. § 1226(a).  That section clearly commits the determination of whether to release the alien to the agency's discretion.  *See* 8 U.S.C. § 1226(a) ("[T]he Attorney General (1) *may* continue to detain the arrested alien; and (2) *may* release the alien . . . .") (emphasis added).  As discussed more fully above, the statute also specifically insulated these discretionary determinations from review.  *See* 8 U.S.C. § 1226(e).  Thus ICE's custody determinations have been committed to the agency's discretion by the clear terms of the statute itself, and APA review is precluded.

Moreover, limiting APA review in the context of 8 U.S.C. § 1226(a) makes sense in light of the nature of the discretionary decision at issue.  In *Oryszak v. Sullivan*, 576 F.3d 522, 525-26 (D.C. Cir. 2009), the D.C. Circuit found that the decision to grant or deny a security clearance is a discretionary action shielded from APA review.  In so finding, the Court noted the sensitive nature of the decision at issue, and concluded that "because the authority to issue a security

clearance is a discretionary function of the Executive Branch, actions based upon denial of security clearance are committed to agency discretion by law . . . ." *Id.* at 526. Here, Plaintiffs seek to challenge ICE's decisions to release or detain certain aliens. Such decisions implicate broader issues of immigration policy that are clearly designated by Congress to the discretion of the executive branch. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) (explaining that "executive power to control the foreign affairs of the nation" is additional source of authority in immigration matters). Thus there is good reason to find that APA review of these determinations is precluded by the discretionary terms of 8 U.S.C. § 1226(a).

        c.  <u>Plaintiffs fail to state a claim under the APA because there is another adequate remedy available to them.</u>

Even if Plaintiffs could establish that ICE had a "No-Release Policy" and that this policy constituted a final agency action, they fail to state a claim under the APA because there is another adequate remedy available to them. *See* 5 U.S.C. § 704. The Supreme Court, in considering this provision, explained that "[w]hen Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). According to the Supreme Court, plaintiffs have "adequate remedies" when statutes creating administrative agencies defined specific procedures for reviewing that particular agency's actions. *Id.* Here, Plaintiffs cannot state a claim under the APA because the INA provides clear evidence that Congress did not intend for judicial review of ICE's discretionary determinations, and at the same time the regulations implementing the INA provide an adequate remedy for an alien wishing to challenge ICE's custody determinations. *See Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)) ("In evaluating the

availability and adequacy of alternative remedies . . . the court must give the APA 'a hospitable interpretation' such that 'only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.'")

As discussed above, 8 U.S.C. § 1226(e) provides clear and convincing evidence that Congress did not intend for judicial review in the district court of ICE's discretionary custody determinations.  But as Plaintiffs concede, an alien who is denied release by ICE may seek *de novo* review of that denial from an immigration judge.  *See* Am. Compl. ¶ 49; 8 C.F.R. § 1003.19; 8 C.F.R. § 1236.1(d)(1).  Those regulations that provide for such review specifically provide that the authority in 8 U.S.C. § 1226 is delegated to the immigration judge for the purposes of making custody determinations for individuals who are in immigration proceedings before the immigration judge.  8 C.F.R. § 1236.1(d)(1) ("Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in [8 U.S.C. § 1226] to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").  In short, detention authority under the statute is exercised first by ICE in making its custody determination, 8 C.F.R. § 236.1(c)(8), and then, where requested by the alien, it may be exercised by the immigration judge.  8 C.F.R. § 1236.1(d)(1); 8 C.F.R. § 1003.19.

Thus, while Congress has clearly precluded district court review of ICE's custody determinations, the regulations implementing section 1226(a) of the INA provide aliens the opportunity to request an immigration court bond hearing that provides them with the exact individualized custody review Plaintiffs are seeking through their amended complain.  There is therefore good reason to find that Plaintiffs have an adequate remedy under 8 U.S.C. § 1226(a) if they wish to challenge ICE's custody determination, because they have the opportunity to seek

an individualized bond hearing before an immigration judge.  Further, and as discussed above, if an individual Plaintiff wanted to bring a constitutional claim related to her or his detention, the Supreme Court has already carved out a narrow exception which would allow the individual to petition for *habeas* relief under 28 U.S.C. § 2241, but Plaintiffs (who vigorously deny that they are seeking *habeas* relief) cannot bring such a claim here.  *Sanders*, 148 F.2d at 20 (explaining that the District of Columbia is not a proper venue for any federal detainee merely because of the Attorney General's location here).  Thus, because a *habeas* claim could provide Plaintiffs the relief requested, another adequate remedy exists, precluding Plaintiffs' APA claims.

Moreover, Plaintiffs' suggestion that immigration court review is not adequate ignores the vast history of case law reviewing issues related to immigration detention.  Even where courts have held that an individual's detention is unlawful, the remedy for any finding of unlawful detention for those in removal proceedings is that the individual must be afforded a bond hearing before an immigration judge.  *See, e.g., Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 948-50 (9th Cir.2008) (holding that petitioner detained for seven years was entitled to relief in the form of an individualized bond hearing); *Reno v. Flores*, 507 U.S. 292, 309 (1993) (holding that due process was satisfied where detained juveniles had the right to a hearing before an immigration judge).  For all of these reasons, Plaintiffs have other adequate remedies available to them and have not stated a claim under the APA.

## VI.    8 U.S.C. § 1252(f)(1) Precludes This Court From Entering the Class-Wide Injunctive Relief Sought by Plaintiffs.

Class-wide permanent injunctive relief is proscribed by the INA.  *See* 8 U.S.C. § 1252(f)(1); *see also Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999) ("By its plain terms, and even by its title, [8 U.S.C. § 1252(f)] is nothing more or less than a limit on injunctive relief.  It prohibits federal courts from granting classwide injunctive

relief against the operation of §§ 1221-1231 . . . .").  More specifically, 8 U.S.C. § 1252(f)(1) provides that "no court other than the Supreme Court shall have jurisdiction or authority to enjoin or restrain the operations of the provisions of [8 U.S.C. §§ 1221-1231], other than with respect to an individual alien against whom proceedings under such part have been initiated."

Here, Plaintiffs ask the Court to enjoin Defendants "from continuing to apply the unlawful No-Release Policy at family detention facilities[,]" and to require Defendants "to consider Plaintiffs and proposed class members for release on bond, recognizance, or other conditions, based on an individualized determination of flight risk and danger to the community . . . ."  (Am. Compl. at Prayer for Relief ¶ c.)  Thus, to grant the relief Plaintiffs seek the Court would need to specifically enjoin the operations of ICE in carrying out its delegated powers under 8 U.S.C. § 1226(a) on a class-wide basis.  This is precisely the type of class-wide injunctive relief that is prohibited under 8 U.S.C. § 1252(f)(1).

It is also worth noting that because, as discussed above, Defendants are already providing individualized custody determinations to Plaintiffs and putative class members, it would be extremely difficult for the Court to craft, and enforce, an injunction that would respond to Plaintiffs' concerns in a manner specific enough to comply with Rule 65(d).  Because an injunction "prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  The injunction requested by Plaintiffs simply does not meet this standard because, as Defendants explained above, the equitable relief sought is based on Plaintiffs' misunderstanding of the discretionary factors ICE permissibly may employ.  This provides additional good reason for the Court to decline to grant the injunctive relief – on either a preliminary or permanent basis – that Plaintiffs request.

## VII.  **Plaintiffs Have Fallen Far Short of Proving Entitlement to Preliminary Injunctive Relief**

"The primary 'purpose of a preliminary injunction is to preserve the object of the controversy in its then existing condition -- to preserve the status quo.'"  *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (quoting *Doeskin Products, Inc. v. United Paper Co.*, 195 F.2d 356, 358 (7th Cir.1952)); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (The purpose of temporary injunctive relief "is merely to preserve the relative positions of the parties until a trial on the merits can be held.").  Here, however, Plaintiffs seek an injunction that would require ICE to provide the very same relief that Plaintiffs are seeking through their amended complaint on an expedited basis to Plaintiffs, and to members of a class that has not as of yet been certified by this Court.  (*See* Pl. Memo. in Support of Am. Mot. for Prelim. Inj. [ECF No. 9-1] at 33; Am. Compl. at Prayer for Relief ¶ c.  Plaintiffs thus are asking the Court to issue an order that they allege would alter Defendants' standards for making custody determinations under 8 U.S.C. § 1226(a) before the Court has even had the benefit of full consideration of the merits of Plaintiffs' claims, and they are seeking to do so for a class of individuals that has not yet been certified.[6]  It is clear that rather than seeking to preserve the status quo, Plaintiffs are seeking to drastically alter the status quo, and they face "an additional hurdle" in proving their entitlement to relief.  *Paleteria La Michoacana, Inc., et al. v. Productos Lacteos Tocumbo S.A.*

---

[6] On January 13, 2015 Plaintiffs filed a supplemental memorandum in support of their preliminary injunction motion arguing that the Court should certify a provisional class for the purpose of granting preliminary injunctive relief on a class-wide basis.  (*See* Supp. Memo. in Support of Am. Mot. for Prelim. Inj. [ECF No. 17-1].)  As Plaintiffs acknowledge, however, provisional class certification is appropriate only where a Court determines that the requirements of Federal Rule of Civil Procedure 23 have been met.  (ECF No. 17-1 at 3); *see also Berge v. United States*, 949 F. Supp. 2d 36, 49 (D.D.C. 2013) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes 2003 Amendments) ("The provision that a class certification 'may be conditional' is deleted.  A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.").  On January 9, 2015, the Court ordered that briefing on Plaintiffs' class certification motion be stayed until further order of the Court.  *See* Minute Order, Jan. 9, 2015, Case No. 1:15-cv-0011 (D.D.C.).  Thus, seeking provisional certification would require an end-run around the Court's January 9, 2015 ruling, by requiring the parties to brief, and the Court to rule on, the very issue that has been stayed by the Court.  Defendants thus request that if the Court decides that it wishes to rule on Plaintiffs request for provisional class certification that they be given the opportunity to respond to Plaintiffs' class certification motion prior to any such ruling.

*de C.V.*, 901 F. Supp. 2d 54, 56-57 (D.D.C. 2012) (quoting *King v. Leavitt*, 475 F. Supp. 2d 67, 71 (D.D.C. 2007)); *see also id.* at 57 ("The court concludes that the defendant thus seeks to alter—not preserve—the status quo. Accordingly, the court will exercise extreme caution in assessing the defendant's invitation to invoke the court's extraordinary equitable powers.").

At a minimum, temporary or preliminary injunctive relief, as an extraordinary form of relief, "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Banks*, 864 F. Supp. 2d at 145 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (internal citations omitted). In its determination of whether the Plaintiffs should be entitled to the preliminary injunctive relief that they are seeking, the Court looks to four factors:

(1)  there is a substantial likelihood plaintiff will succeed on the merits;
(2)  plaintiff will be irreparably injured if an injunction is not granted;
(3)  an injunction will not substantially injure the other party; and
(4)  the public interest will be furthered by an injunction.

*Barton*, 131 F. Supp. 2d at 241 (additional citations omitted). In this case, Plaintiffs have fallen far short of sustaining their burden to establish that any of these factors is met, and Plaintiffs' motion for injunctive relief should be denied.

a.  Plaintiffs' Likelihood of Success on the Merits is Extremely Low

For all of the reasons discussed above, Plaintiffs' likelihood of success on the merits is exceedingly low as Plaintiffs' amended complaint fails to state a claim and has fatal jurisdictional defects. Specifically, Plaintiffs have stated no valid constitutional or APA claims. In fact, they have not even sufficiently alleged the existence of the "No-Release Policy" on which they base their claims. Moreover, this Court lacks jurisdiction over Plaintiffs' claims, and the Court is statutorily precluded by 8 U.S.C. § 1252(f)(1) from issuing the injunctive relief that Plaintiffs seek. Thus, Plaintiffs are unlikely to succeed on the merits in this matter.

b.  Plaintiffs Cannot Show Irreparable Harm

Plaintiffs complain that they may suffer harm because Defendants' alleged "No-Release Policy" causes them to be subjected to detention, and that "most individuals in their situation would be released upon an individualized determination, but for the illegal policy."  (*See* Pl. Memo. in Support of Am. Mot. for Prelim. Inj. [ECF No. 9-1] at 29-31.)  As an initial matter, this Court has stayed the issue of class certification, and Plaintiffs therefore cannot base their claims of irreparable harm on the speculative claims of a putative class that has not yet been certified, and who Plaintiffs may not represent as Plaintiffs have all been deemed flight risks. Moreover, even if the Court considered Plaintiffs' class allegations, their contention that some number of putative class members would be released if the alleged "No-Release Policy" were enjoined is purely speculative, and not sufficient to establish that Plaintiffs or similarly-situated individuals are suffering irreparable harm, or that any such harm would be cured by an injunction.  *See Safari Club International v. Jewell*, -- F. Supp. 2d --, 2014 WL 2535948, at *4 (D.D.C. June 6, 2014) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)) ("Irreparable harm must be great and certain, not speculative.").

Further, as discussed at length above, Plaintiffs (and all similarly situated individuals) may seek reconsideration of Defendants' custody determinations before an immigration judge, who will provide the exact individualized consideration that Plaintiffs claim they are not receiving from Defendants.  The availability of this independent review seriously undermines Plaintiffs' claims of irreparable harm, because any Plaintiff or putative class member who is detained based on an ICE custody determination will be detained under that decision only so long as it takes for him or her to appear before an immigration judge for an independent review.

This procedure thus provides its own protections against the possibility of irreparable harm so that a class-wide preliminary injunction is unnecessary.[7]

The fact is that Plaintiffs have each received a bond determination hearing, and have been granted bond (and in the cases of at least eight of the ten named Plaintiffs, have already been released from ICE custody). Am. Compl. ¶¶ 65, 73, 81, 90; Exhs. B and C. Where Plaintiffs have been released on bond, they cannot claim to be suffering irreparable harm from Defendants' decision to detain them. Moreover, the same relief is already available to any putative class member, and so class wide preliminary injunctive relief is unnecessary. (*See* Supp. Memo. in Support of Am. Mot. for Prelim. Inj. [ECF No. 17-1] at 2 (acknowledging the brevity of the detention that any putative class member may face through Plaintiffs' inability to name any Plaintiff who is actually suffering the harm about which they complain even long enough to bring that individual into the current action).)

c.  The Government's Interests Would be Harmed, and the Public Interest Would Not Be Served by the Grant of Injunctive Relief

The third and fourth factors also weigh heavily against granting injunctive relief. As discussed above, granting the preliminary injunctive relief that Plaintiffs seek would alter, rather than preserve, the status quo. Granting Plaintiffs' request to enjoin the manner in which ICE exercises its discretionary authority under 8 U.S.C. § 1226(a) on a preliminary and class-wide basis (before any class has even been certified) harms the Government, and is not in the public interest, because an injunction of this magnitude should come, if at all, only after a full and fair

---

[7] Plaintiffs contend that despite the availability of bond hearings, they are harmed by delay that may occur between their custody determination by ICE, and the scheduling of their bond hearing before an immigration judge. However they provide no basis to find that any such delay may be attributed to ICE. Bond hearings are scheduled by the immigration courts, which are part of the Executive Office of Immigration Review, a division of the U.S. Department of Justice. *See* 8 C.F.R. § 1003.19. If Plaintiffs are harmed by any delay that may occur in the scheduling of the bond hearing, that harm cannot be said to be the result of ICE's custody determination, and such harm would not be redressed by the injunctive relief they are seeking.

consideration of the issues and facts.  It is especially important that the Court tread extremely carefully in this case because—as Ms. Jones' declaration establishes—Plaintiffs' have inaccurately stated over 40 times in their complaint that a "no release policy" exists when 126 individuals were released from ICE custody in the most recent six-month period.  Because Plaintiffs seek such broad change based on such a faulty factual foundation, the Court should "exercise extreme caution in assessing [Plaintiffs'] invitation to invoke the court's extraordinary equitable powers."  *Paleteria*, 901 F. Supp. 2d at 57.

Moreover, it is well-settled that the public interest in enforcement of United States immigration laws is significant.  *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878-79 (1975) (additional citation omitted)).  Plaintiffs ask this Court to intervene in an area where the actions about which they complain have clearly been delegated to ICE's discretion.  *See* 8 U.S.C. § 1226(a).  This section is one piece of the overall statutory scheme of the INA, which lays out the bulk of the nation's immigration laws.  Interference with ICE's ability to exercise its discretion under this statutory section harms the public's interest in enforcement of the INA.  Moreover, because ICE considers permissible discretionary factors in its custody determinations and provided individualized determinations, it would be difficult for Defendants to understand how to comply with the injunction that Plaintiffs have asked this Court to enter which is vague, and appears to require Defendants to do what they believe they already are doing.  The potential for confusion in ICE's exercise of its discretion under the statute is another potential harm to both the Defendants and the public that counsels against entry of a preliminary injunction in this case.  Because the balance of hardships and

public interest weigh in favor of Defendants and heavily against Plaintiffs, the Court should deny

Plaintiffs' request for preliminary injunctive relief.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss

Plaintiffs' amended complaint, and deny Plaintiffs' motion for injunctive relief.


Dated:  January 23, 2015                              Respectfully submitted,

RONALD C. MACHEN JR.                          JOYCE R. BRANDA
D.C. BAR # 447889                                    Acting Assistant Attorney General
United States Attorney for                           Civil Division
  the District of Columbia

DANIEL F. VAN HORN                             LEON FRESCO
Chief, Civil Division                                Deputy Assistant Attorney General
D.C. Bar #924092                                     Civil Division

BY:  /s/ *Wynne P. Kelly* (with permission)          WILLIAM C. PEACHEY
WYNNE P. KELLY                                 Director, District Court Section
Assistant United States Attorney                     Office of Immigration Litigation
555 Fourth St., N.W.
Washington, D.C.  20530                         WILLIAM C. SILVIS
Wynne.Kelly@usdoj.gov                          Assistant Director, District Court Section
Phone: (202) 252-2545                                Office of Immigration Litigation

                                            BY:  /s/ *Sarah B. Fabian*
                                                 SARAH B. FABIAN
                                                 Trial Attorney
                                                 District Court Section
                                                 Office of Immigration Litigation
                                                 Civil Division, U.S. Department of Justice
                                                 P.O. Box 868, Ben Franklin Station
                                                 Washington, D.C.  20044
                                                 Phone: (202) 532-4824
                                                 Fax: (202) 616-8962
                                                 Sarah.B.Fabian@usdoj.gov

                                                 Attorneys for Defendants