**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| R.I.L.R., *et al.*, on behalf of themselves and others similarly situated,<br><br>　　　　*Plaintiffs,*<br><br>　　　　*v.*<br><br>Jeh JOHNSON, Secretary of the Department of Homeland Security, in his official capacity, *et al.*<br><br>　　　　*Defendants.* | Civil Action No. 1:15-cv-00011 (JEB) |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

In its reply brief in support of its Motion to Dismiss, DHS charges Plaintiffs' counsel with making a "misrepresentation" to this Court. DHS Reply Br. at 17, 18 & n.9. That allegation is inappropriate and wrong.

DHS argues in this case that "the availability of habeas corpus relief" is an "adequate remedy that precludes review under the APA." DHS Reply Br. at 16. The Supreme Court, however, has allowed APA challenges notwithstanding the availability of habeas, specifically in the context of an agency's adverse immigration action. *See Shaughnessy v. Pedreiro*, 349 U.S. 48, 52 (1955); *Brownell v. Tom We Shung*, 352 U.S. 180, 181 (1956). There is no basis for DHS's assertion that our reliance and explication of these cases constitutes a "misrepresentation."

*Pedreiro* and *Brownell* involved review of immigration deportation and exclusion orders, respectively. The Supreme Court held that such orders could be reviewed under the APA,

notwithstanding the availability of habeas relief. *Pedreiro*, 349 U.S. at 52; *Brownell*, 352 U.S. at 181. As we expressly noted, Congress subsequently amended the Immigration and Nationality Act ("INA") to preclude APA review in these *specific* contexts, *i.e.*, deportation and exclusion orders. Pls.' PI Br. at 27 n.21; *see also* Erratum (ECF No. 26). Congress did not, however, abrogate the broader holding of the decisions: that the mere availability of habeas does not preclude APA relief.

Indeed, nearly thirty years after *Pedreiro* purportedly was "expressly overruled" (DHS Reply Br. at 17), the Supreme Court relied on that decision in construing 5 U.S.C. § 704, the APA's "other adequate remedy" provision on which DHS now relies to defeat review. The Supreme Court explained that "[a] restrictive interpretation of § 704 would unquestionably, in the words of Justice Black, 'run counter to § 10 and § 12 of the Administrative Procedure Act.'" *Bowen v. Mass.*, 487 U.S. 879, 903 (1988) (quoting *Pedreiro*, 349 U.S. at 51). The Supreme Court itself thus recognized in *Bowen* that *Pedreiro*'s holding went beyond the specific issue addressed in that case, and that this broader holding was not abrogated by the narrow INA amendment enacted by Congress in 1961 to limit judicial review of deportation and exclusion orders. Congress may, of course, supersede the specific result in a case without overturning its broader holding or reasoning. *See, e.g.*, *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 240 (2005) (Congress enacted legislation to change the result in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), which had limited disparate-impact liability under Title VII, but Congress did not "amend the ADEA or speak to the subject of age discrimination," so "*Wards Cove*'s pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA.").[1]

---

[1] As another example, the former Immigration and Naturalization Service "relie[d] heavily" on a decision of the Supreme Court, *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983), despite the fact that "Congress superseded the Court's holding" that expunged state convictions (continued…)

DHS suggests that the Supreme Court's reliance on *Pedreiro* in *Bowen* is irrelevant because after *Bowen*, "the REAL ID Act of 2005 . . . removed any possibility of potential contemporaneous habeas and APA jurisdiction for removal proceedings." DHS Reply Br. at 17 (citing 8 U.S.C. § 1252(a)(5)). Section 1252(a)(5), however, applies to an "order of removal," a kind of immigration action not at issue in this case. Section 1252(a)(5) says nothing about APA review of *other* kinds of immigration determinations, such as the decision to apply an illegal framework for custody determinations at issue in this case.

DHS also is "troubl[ed]" by our reliance on *Brownell*, citing the D.C. Circuit's decision in *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1161 (1999), as evidence that "Congress amended the INA in 1961 to expressly overrule *We Shung*." Defs.' Reply Br. at 18. We, of course, agree that the 1961 INA amendment overruled *the specific result* in *Brownell*, and we have expressly acknowledged that point. *Saavedra Bruno* says nothing more than this. *See* 197 F.3d at 1161 ("Congress overruled *We Shung*, amending the INA to make clear that habeas corpus was the only method for judicial review *of exclusion orders*." (emphasis added)). It does not state or imply that *Brownell*'s broader holding concerning the relationship between habeas and the APA has been superseded.

In short, *Pedreiro* and *Brownell* hold that the availability of habeas to challenge an agency action, including an adverse immigration action, does not preclude APA review. Congress has subsequently amended the INA to limit review of deportation and exclusion orders

---

could be used to prosecute felon-in-possession crimes. *Lujan-Armendariz v. INS*, 222 F.3d 728, 746 n.29 (9th Cir. 2000). The Ninth Circuit recognized that "*Dickerson* may remain good law for the proposition that, in general, the question of what counts as a conviction for purposes of a federal law remains a question of federal law." *Id.* (The Court went on to distinguish *Dickerson* and resolve the case against the Government, a decision that was overruled (without mentioning the vitality of *Dickerson*) in *Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011) (en banc).)

(the specific immigration actions at issue in *Pedreiro* and *Brownell*). But it has never abrogated those decisions' broader holding and reasoning. It follows that in *other* immigration contexts – including the one at issue here – habeas and APA review can comfortably coexist. *See Smith*, 544 U.S. at 240. DHS is entitled to its view that our argument is wrong, but its accusation that we have made a "misrepresentation" to the Court is entirely without merit.

Dated: February __, 2015                              Respectfully submitted,

                                                      _____

| | |
|---|---|
| Judy Rabinovitz | Dennis B. Auerbach (D.C. Bar No. 418982) |
| Michael K.T. Tan | David M. Zionts (D.C. Bar. No. 995170) |
| Anand V. Balakrishnan | Philip Levitz (D.C. Bar No. 1018430) |
| Lindsay Nash | Sonia Lahr-Pastor* |
| AMERICAN CIVIL LIBERTIES UNION | COVINGTON & BURLING LLP |
| FOUNDATION, IMMIGRANTS' RIGHTS PROJECT | One CityCenter |
| 125 Broad Street, 18th Floor | 850 Tenth St., N.W. |
| New York, NY 10004 | Washington, D.C.  20001–4956 |
| (212) 549-2618 | (202) 662-6000 |
| | |
| Stephen B. Kang | Arthur B. Spitzer (D.C. Bar. No. 235960) |
| AMERICAN CIVIL LIBERTIES UNION | AMERICAN CIVIL LIBERTIES UNION OF THE |
| FOUNDATION, IMMIGRANTS' RIGHTS PROJECT | NATION'S CAPITAL |
| 39 Drumm Street | 4301 Connecticut Avenue, N.W., Suite 434 |
| San Francisco, CA 94111 | Washington, D.C. 20008 |
| (415) 343-0783 | (202) 457-0800 |
| | |
| Witold J. Walczak | Molly Tack-Hooper |
| ACLU OF PENNSYLVANIA | ACLU OF PENNSYLVANIA |
| 313 Atwood Street | P.O. Box 40008 |
| Pittsburgh, PA 15213 | Philadelphia, PA 19106 |
| (412) 681-7864 | (215) 592-1513 x 113 |
| | |
| Denise Gilman | Adriana Piñon |
| IMMIGRATION CLINIC | Rebecca L. Robertson |
| UNIVERSITY OF TEXAS SCHOOL OF LAW | ACLU OF TEXAS |
| 727 E. Dean Keeton St. | 1500 McGowen Street, Suite 250 |
| Austin, TX 78705 | Houston, Texas 77004 |
| (512) 232-1292 |  (713) 942-8146 |

*Admitted to the Bar of the Commonwealth of Pennsylvania, admission to the Bar of the District of Columbia pending, and supervised by the principals of the firm.